MOORE, Judge.
F.V.O. (“the mother”) appeals from separate judgments of the Coffee Juvenile Court (“the juvenile court”) that, among other things, concluded that the most appropriate permanency plan for the mother’s children, M.A.H., A.H., and B.H.V. (sometimes hereinafter referred to collectively as “the children”) is adoption. We affirm.
On April 10, 2009, the Coffee County Department of Human Resources (“DHR”) filed separate petitions in the Coffee Juvenile Court (“the juvenile court”) asserting that the children were dependent and in need of care and supervision. In the petitions, DHR alleged that M.A.H. had been sexually molested by an unknown individual and that the children had been removed from the home of F.V.O. and E.H.A. (“the father”); DHR requested an award of custody to protect the children while an investigation was completed. A shelter-care hearing was held on that same date, pursuant to which the juvenile court entered shelter-care orders for each of the children on April 10, 2009, awarding custody of the children to DHR.
On April 28, 2009, DHR filed a notice informing the juvenile court that, pending the completion of the investigation, the mother would have supervised visitation with the children and the father would have no visitation. On May 4, 2009, the juvenile court entered an order appointing an interpreter for the mother and the father, pursuant to their motion requesting the same. On that same date, DHR submitted a court report updating the juvenile court about the status of the case and recommending that custody remain with DHR until all safety threats had been resolved and a full investigation of the allegations had been completed.
On June 25, 2009, the children’s guardian ad litem filed a motion to suspend the mother’s and the father’s visitation with the children; in that motion, the guardian ad litem alleged that the mother had been chastised during her supervised visitation for discussing the sexual-abuse allegations with the children, that the father had been arrested for sexual abuse, and that the mother’s involvement in the abuse was still under investigation. The juvenile court entered orders on June 25, 2009, setting the dependency petitions for a final hearing and, among other things, appointing interpreters and attorneys for the mother and the father for the final hearing. On *13 that same date, the juvenile court granted the guardian ad ¡item’s motion to suspend visitation with the children by the mother and the father. After the filing of a number of motions to continue and other motions, on June 28, 2010, the juvenile court rescheduled the dependency hearing for August 25, 2010.
On August 27, 2010, the juvenile court entered orders finding, among other things, that the children were dependent; that reasonable efforts had been made to prevent removing the children from their home and that those efforts had failed; that placement in the home with the mother and the father would be contrary to the children’s best interests; that reasonable efforts would continue to be made to reunite the children with the mother and to restore custody to her; and that reasonable efforts to reunite the father with the children were not required. The juvenile court set the case for dispositional review in February 2011.
A dispositional review hearing was held on February 2, 2011. On February 10, 2011, the juvenile court entered orders stating, among other things, that reasonable efforts had been made to reunite the mother with the children and that those efforts had failed but would continue to be made; that reasonable efforts to reunite the children with the father were no longer required; that the most appropriate permanency plan for the children at that time was relative placement; and that custody was to remain with DHR. The case was set for further review on August 4, 2011.
On May 10, 2011, DHR filed motions requesting that the juvenile court enter orders not requiring the termination of parental rights, although the children had been in DHR’s care since April 10, 2009, because, it said, DHR had located a potential suitable relative resource — Fi.V.O., the mother’s brother — and a home study was pending, which, DHR asserted, was a compelling reason not to pursue termination of parental rights.
On August 1, 2011, DHR submitted a permanency/review report, which, regarding placement of the children with Fi.V.O., stated: “Although the home is suitable, Coffee Co[unty] DHR is unable to recommend this relative as a resource due to the inability to verify employment, rental lease, and criminal background.” On August 3, 2011, DHR submitted an amendment to that report, informing the court that, after that report had been filed, termination-of-parental-rights petitions had been filed by DHR “due to the relative resources not being suitable at this time. [DHR] will not recommend the relatives for placement.”[1]
At the hearing on August 4, 2011, DHR requested that the permanency plan be changed to adoption with unidentifiable resources. Amanda Wallace, a foster-care worker for DHR, testified that DHR had exhausted its investigation of all potential relative resources. She stated that none of the four maternal relatives that had been identified had met the criteria for DHR to be able to approve them. She also testified that reunification with the mother had been unsuccessful, that the mother had been given goals to achieve to work toward reunification, and that those goals had not been met at that time. Wallace stated that, regarding the three maternal relatives in Bullock County, there was not enough living space for the children in the homes of those relatives. With regard to Fi.V.0., Wallace testified that she had conducted the home study and that the recommendation section of the home study had stated that Fi.V.0. and his *14 family were willing to provide care for the children and that they had made adequate accommodations for the children. Wallace stated that DHR had neither approved nor denied Fi.V.0. and his family as a resource. She stated that Fi.V.0. and his wife had not been able to provide Social Security numbers for adequate background checks because they are not legal immigrants. She testified that she had received guidance from the State regarding what she was allowed to do with undocumented persons under the State’s policy and DHR’s policy and that, based on that guidance, she had determined that Fi.V.0. was required to provide the requested documentation.
Brandon Hardin, the director of DHR, testified that the mother had been “indicated” for inadequate supervision of the children. He testified that the father had been “indicated” for penetration and molestation of M.A.H. and that the father had pleaded guilty to “sexual abuse of a child less than twelve.” Hardin testified that it had been determined by DHR that the mother could not protect the children.
The guardian ad litem testified that she was opposed to FLV.O.’s being a relative resource and that she had sent him a letter requesting that he provide her with a copy of his permanent-resident card, or green card, an employment certification, a work permit, a United States Visa, birth certificates for Fi.V.O. and the mother, an employer eligibility verification, a W2 form or income-tax return to establish income, his driver’s license, his vehicle insurance, and his lease agreement. She testified that that information is the same information that DHR would need in order to run an adequate background check to determine whether Fi.V.0. had any history of abuse or neglect. The guardian ad litem also stated that she had suggested that she might ask the United States Immigration and Customs Enforcement agent for the area to make efforts to have Fi.V.0. and other members of the mother’s family deported. She stated that, pursuant to the law that was in effect, she thought there would be problems with Fi.V.O.’s being a resource in this case. She testified that she believed that Fi.V.0. might not be presenting himself as a resource at the time of the trial because of the possibility that he and his family might be deported.
The juvenile-court judge stated at the close of the hearing that “reasonable efforts shall no longer be required pursuant to § 12-15-312(e)(l) of the Code of Alabama as to the mother.” Thereafter, on January 3, 2012, the juvenile court entered judgments stating, among other things, that reasonable efforts had been made to reunite the mother with the children and that those efforts had failed; that reasonable efforts to reunite the father with the children were no longer required; that the most appropriate permanency plan was adoption; and that custody was to remain with DHR. The juvenile court set the cases for review on February 28, 2012. On January 17, 2012, the mother filed notices of appeal from the juvenile court’s January 3, 2012, judgments to this court. On January 19, 2012, the juvenile court entered orders stating that, pursuant to Rule 28(A)2, Ala. R. Juv. P., there was an adequate record for purposes of an appeal and requiring the Chief Juvenile Probation Office to forward a computer disk containing a recording of the proceeding held on August 4, 2011, to a designated court reporter. On January 23, 2012, the mother filed a motion, referencing all three case numbers, to amend, requesting the juvenile court to amend its January 19, 2012, judgments to require the designated court reporter to be provided with recordings of all court proceedings held in the case; the juvenile court denied the mother’s motion on January 26, 2012. On February 24, *15 2012, the mother filed a motion in this court requesting an order requiring that all recordings from all proceedings be forwarded to the court reporter to be transcribed and added to the record on appeal. On April 3, 2012, this court granted the mother’s motion to supplement the record with the transcripts of all proceedings.
The mother raises the following issues on appeal: (1) that the juvenile court erred in finding that adoption is the most appropriate permanency plan for the children and (2) that the juvenile court erred in finding that DHR had made reasonable efforts to reunite the mother with the children.
Before we proceed to the issues raised by the mother on appeal, we first consider whether we have jurisdiction over this appeal. “Jurisdictional matters are of such importance that a court may take notice of them ex mero motu.” McMurphy v. East Bay Clothiers, 892 So.2d 395, 397 (Ala.Civ.App.2004). In Ex parte T.C., 96 So.3d 123 (Ala.2012), our supreme court construed § 12-15-601, Ala.Code 1975,[2] as providing that not “all orders in juvenile proceedings [are] appealable.” 96 So.3d at 130. Rather, according to Ex parte T.C., the legislature, by changing the wording of former § 12-15-120, Ala.Code 1975, when replacing it with current § 12-15-601, did not intend to alter the prior law that only judgments considered “sufficiently final,” 96 So.3d at 126 n. 1, would support an appeal. Thus, the immediate question concerns whether the judgments in this case, which altered the permanency plan for the children from relative placement to adoption by an unidentified resource, constitute “sufficiently final” judgments in these dependency proceedings to invoke the appellate jurisdiction of this court.
Juvenile courts are required by statute to conduct hearings at least annually for dependent children who have been removed from their home and placed in the foster-care system. See § 12-15-315(a), Ala.Code 1975. In those “permanency hearings,” DHR presents to the juvenile court its plan for the permanent custodial disposition of the child and the juvenile court then “determine[s] the permanency plan for the child.”[3] Id. As recognized by this court, “issues such as DHR’s plan to reunify a family, the reasonableness of DHR’s efforts to rehabilitate a parent, and the possible placement of a child with a relative are meant to be aired and resolved at a permanency hearing.” D.P. v. Limestone Cnty. Dep’t of Human Res., 28 So.3d 759, 763 (Ala.Civ.App.2009).
In this case, the juvenile court conducted a permanency hearing, after which it determined, among other things, that reasonable efforts to reunite the mother with the children had failed[4] and that the
*16 most appropriate permanency plan was adoption as opposed to relative placement. As Presiding Judge Thompson correctly notes in his dissent, 145 So.3d at 23-24 n. 14, the juvenile court did not expressly state in its judgments that DHR was relieved of continuing to make reasonable reunification efforts in regard to the mother as it had orally indicated at the close of the August 4, 2011, hearing. See In re Adoption of John Doe, 98 N.M. 340, 348, 648 P.2d 798, 806 (N.M.Ct.App.1982) (“A trial court’s oral statements as to the basis for its ruling, made before judgment is entered, and not embodied therein, cannot be considered part of the judgment.”). However, up to that point, the juvenile court had indicated that reasonable efforts to reunite the mother with the children had failed but had expressly ordered that those efforts were to continue. In the January 3, 2012, judgments from which this appeal is taken, the juvenile court did not order the continuation of family-reunification efforts. In light of the consistent language used by the juvenile court in its prior orders, that omission bespeaks an intention on the part of the juvenile court that DHR would no longer be required to make reasonable efforts to reunite the children with the mother. See Boyd v. Franklin, 919 So.2d 1166, 1171 (Ala.2005) (quoting Price v. Price, 360 So.2d 340, 343 (Ala.Civ.App.1978)) (“ ‘If there is uncertainty and ambiguity in a ... judgment, the [reviewing] court must construe it so as to express the intent of the ... trial judge.’ ”); see also Reeder v. Reeder, 356 So.2d 202, 204 (Ala.Civ.App.1978) (“Where a judgment or decree is so obscure as to not clearly express the exact determination of the court, reference may be had to pleadings and other proceedings to which it refers, and it should be interpreted in light of the pleadings and the entire record.”).
Also, in its prior orders, the juvenile court had approved a permanency plan calling for the return of the children to the mother or placement of the children with relatives. When a juvenile court determines that the appropriate permanency plan is to return a child to a parent, DHR must make reasonable efforts to rehabilitate the parent and remove any obstacles to family reunification. See § 12 — 15—32(b), Ala.Code 1975; see also H.H. v. Baldwin Cnty. Dep’t of Human Res., 989 So.2d 1094, 1098 (Ala.Civ.App.2007) (opinion on return to remand) (per Moore, J., with two Judges concurring in the result). When a juvenile court determines that it is in the best interest of a child to be placed in the “permanent” custody of a relative, the juvenile court necessarily determines that it is in the best interest of that child to preserve some beneficial aspect of the parent-child relationship by not terminating parental rights. See D.M.P. v. State Dep’t of Human Res., 871 So.2d 77 (AIa.Civ.App. 2003) (plurality opinion). Continued efforts at parental rehabilitation would be consistent with a permanency plan seeking placement of a child with a relative. See id. However, when a juvenile court orders that a child be placed for adoption with an unidentified resource, the law requires DHR to file a petition to terminate the parental rights of the parents of the child. See 12 — 15—315(a)(2), Ala.Code 1975 (stating that DHR “shall” file a petition to terminate parental rights when the permanency plan calls for adoption by an unidentified resource or a foster parent).[5] Thus, unless the juvenile court provides for concurrent *17 permanency planning, see § 12-15-315(b), Ala.Code 1975 (authorizing concurrent permanency planning),[6] which the judgments at issue in this appeal did not do, the approval of a permanency plan of adoption, without any express direction for DHR to continue to make reasonable family-reunification efforts, necessarily implies that the juvenile court has turned its focus away from family reunification and toward the severance of the parent-child relationship.[7] Accordingly, the judgments at issue in this case relieved DHR of continuing to make reasonable efforts to rehabilitate the mother or to reunite her with the children.
The judgments also relieved DHR of continuing to make efforts to locate relatives “qualified to receive and care for the children].” § 12-15-314(a)(3)c., Ala.Code 1975. When a permanency plan establishes a goal of relative placement, the juvenile court and DHR have a duty to make reasonable efforts to accomplish that goal. See § 12-15-312(b), Ala.Code 1975. In this case, DHR presented evidence indicating that, after nearly three years of intensive investigation, it could not locate a willing relative fit to care for the children. After receiving that evidence, the juvenile court changed the previous permanency plan from placement with a relative to adoption. That determination implies that the juvenile court found that none of the relatives proffered by the mother would be suitable custodians for the children or that it would otherwise be in the best interests of the children to be adopted by an unidentified resource rather than to be placed in a relative’s custody. As such, the juvenile court, in effect, directed DHR to cease its efforts to locate a qualified relative to receive the children and to redirect its efforts toward adoption with a termination of the mother’s parental rights.
Thus, the judgments in this case conclusively determined the two issues the *18 mother takes issue with on appeal: (1) that adoption serves the best interests of the children as opposed to any other custodial alternative and (2) that DHR had made reasonable efforts to rehabilitate the mother. The judgments further, in effect, terminated the dependency proceedings,[8] with any further action regarding the custody of the children contemplated to occur within the framework of the termination-of-parental-rights proceedings, completely separate civil actions. See M.M. v. B.L., 926 So.2d 1038, 1041 (Ala.Civ.App.2005).
“A final judgment is one ‘that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.’ Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990). See also McCollough v. Bell, 611 So.2d 383, 385 (Ala.Civ.App.1992) (‘Any decision, order, or [judgment] of the trial court which puts an end to the proceedings between the parties to a cause in that court is final and may be reviewed on appeal.’). ‘A final judgment is one that completely adjudicates all matters in controversy between the parties.’ Wilson v. Glasheen, 801 So.2d 848, 849 (Ala.Civ.App.2001) (emphasis added).”
Wilkerson v. Wilkerson, 868 So.2d 1119, 1121 (Ala.Civ.App.2003). The judgments at issue in this appeal bear all the indicia of a final judgment.
The mother cannot raise these same issues in an appeal from judgments entered in the termination-of-parental-rights action, as Presiding Judge Thompson argues in his dissent. 145 So.3d at 21. In M.H. v. Jefferson County Department of Human Resources, 42 So.3d 1291, 1293 (Ala.Civ.App.2010), this court unanimously held that a mother could not raise in an appeal of a judgment terminating her parental rights any error made by a juvenile court in relieving DHR of making reasonable efforts at family reunification in an earlier dependency proceeding. Likewise, this court has also recently recognized that the legislature specifically intended that issues regarding the viability of placing a child with relatives ordinarily should be conclusively decided at a permanency hearing, D.P., supra, not during a trial on a petition for termination of a parent’s parental rights. See also A.D.B.H. v. Houston Cnty. Dep’t of Human Res., 1 So.3d 53, 69-70 (Ala.Civ.App.2008) (Moore, J., concurring in part and concurring in the result) (arguing that consideration of placing a dependent child with a relative should never be decided in the adjudicatory phase of a termination-of-parental-rights case, but must take place in a per *19 manency hearing). Under the doctrines of collateral estoppel and res judicata, issues conclusively decided between the same parties in prior litigation cannot be collaterally attacked in a subsequent action. See generally Ex parte LCS Inc., 12 So.3d 55, 58 (Ala.2008).
Section 12-15-319(a), Ala.Code 1975, provides, in pertinent part:
“If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
“(7) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.”
Section 12-15-319 requires a juvenile court, when deciding whether grounds for termination exist, to consider whether DHR’s reasonable parental-rehabilitation efforts have failed. However, nothing in § 12-15-319 requires the juvenile court to relitigate the issue of the reasonableness of DHR’s efforts during the adjudicatory phase of a termination-of-parental-rights proceeding. By that point, in an ordinary case like this case, the legislature intended that any questions regarding the reasonableness or success of DHR’s rehabilitation efforts would have long ago been decided in a permanency hearing. D.P., supra. Although a juvenile court must consider the failure of reasonable family-reunification efforts, it should do so only by taking judicial notice of its prior judgment. See generally Ex parte State Dep’t of Human Res., 890 So.2d 114 (Ala.2004) (authorizing juvenile court to take judicial notice of its own records but not of court reports containing inadmissible hearsay evidence). Otherwise, allowing a parent to raise the issue at such a late stage would not only be duplicative and a waste of judicial resources but could cause an unwarranted delay in the final determination of the termination-of-parental-rights petition. See T.V. v. B.S., 7 So.3d 346, 361 (Ala.Civ.App.2008) (Moore, J., concurring in the result).
In Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990), the supreme court held that, under former § 26-18-7, Ala.Code 1975, the predecessor statute to § 12-15-319, a juvenile court could not terminate a parent’s parental rights without exhausting viable alternatives. After Beasley was decided, our legislature amended the former Alabama Juvenile Justice Act, former 12-15-1 et seq., Ala.Code 1975, to comply with the federal Adoption and Safe Families Act, 42 U.S.C. § 671 and § 675, by, among other things, mandating that juvenile courts decide the merits of relative placement at permanency hearings. See A.D.B.H., 1 So.3d at 69 (Moore, J., concurring in part and concurring in the result). Those legislative changes did not abrogate the need for juvenile courts to exhaust viable alternatives, which is mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, see Roe v. Conn, 417 F.Supp. 769, 779-80 (M.D.Ala.1976), but established a new judicial procedure for implementing that standard, at least for children in fos *20 ter-care placement. Instead of awaiting the adjudicatory hearing to determine whether placement with a relative could be accomplished as a viable alternative to termination of parental rights, the legislature decided that the issue would be decided in a separate permanency hearing to take place before the termination-of-parental-rights adjudicatory hearing. See § 12-15-315. Thus, contrary to Presiding Judge Thompson’s dissent, 145 So.3d at 24, it would not be “premature” to consider any issue regarding relative placement on an appeal from a permanency judgment; it would, in fact, be too late to consider those issues on an appeal from a judgment terminating a parent’s parental rights.
In D.P., this court held that a dependency order should be considered final and appealable if it decides crucial issues regarding the fundamental rights of parents that would otherwise evade appellate review. 28 So.3d at 764. The judgments in this ease decide issues that adversely affect the fundamental rights of the mother. Unless we allow this appeal, the mother generally will be precluded from raising those same issues in any subsequent appeal. Hence, the holding in D.P. only reinforces our conclusion that the judgments at issue are final and appealable. We note Presiding Judge Thompson’s concern that allowing appeals from permanency-hearing judgments may slow down the progress toward termination of parental rights in some cases. 145 So.3d at 26. However, we cannot overlook the stated legislative intent that certain issues be adjudicated in permanency hearings or ignore that parents have a statutory right to raise those issues on appeal from the judgment in which they were decided, see § 12-15-601, and not from a later judgment in a totally separate action.[9]
Turning to the merits, the mother first argues on appeal that the juvenile court erred in determining that adoption is the most appropriate permanency plan for the children because, she asserts, that finding is not supported by the evidence. Thus, like in L.M. v. Jefferson County Department of Human Resources, 68 So.3d 859 (Ala.Civ.App.2011), the mother challenges the sufficiency of the evidence; however, also like in L.M., “the juvenile court did not make any specific findings of fact in its judgment and the mother failed to file a postjudgment motion challenging the sufficiency of the evidence.” 68 So.3d at 860-61.[10] This court stated in L.M.: *21 68 So.3d at 861 (footnote omitted).[11] Like in L.M., the mother in the present case failed to preserve her argument for review by this court.
*20 “In New Properties, L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004), our supreme court held: ‘[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.’ Because the mother failed to ‘move for a new trial or otherwise properly raise before the [juvenile] court the question relating to the sufficiency or weight of the evidence,’ we must conclude that she failed to preserve her argument for review by this court.”
*21 The mother also argues on appeal that the juvenile court erred in concluding that DHR had made reasonable efforts to reunite the mother with the children. This argument is also based on the alleged insufficiency of the evidence, and the mother failed to file a postjudgment motion challenging that insufficiency before the juvenile court. Thus, the mother failed to preserve this argument for review as well. See L.M., supra.
The juvenile court’s judgments are affirmed.
AFFIRMED.
BRYAN and THOMAS, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing.

. The petitions to terminate parental rights are not included in the record on appeal.

. Section 12-15-601 provides, in full:
"A party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court proceeding pursuant to this chapter. The procedure for appealing these cases shall be pursuant to rules of procedure adopted by the Supreme Court of Alabama. All appeals from juvenile court proceedings pursuant to this chapter shall take precedence over all other business of the court to which the appeal is taken.”

. To the extent Presiding Judge Thompson implies that the adjudication of a permanency plan is merely an administrative proceeding, 145 So.3d at 22 (Thompson, P.J., dissenting), we disagree. Section 12-15-312(a), Ala.Code 1975, does not require juvenile-court judges to passively receive and review the permanency plan developed and presented by DHR; rather, a juvenile-court judge is required to actively "determine” the appropriate permanency plan for the child, which may differ from the plan proposed by DHR.

.We note that the juvenile court did not invoke § 12-15-312(c) or (e) in regard to the mother. Therefore, we will not address Pre *16 siding Judge Thompson’s point that the legislature did not intend for orders applying those subsections to be final and appealable. 145 So.3d at 22 (Thompson, P.J., dissenting).

. Under § 12-15-317(1), Ala.Code 1975, DHR must file a petition to terminate the *17 parental rights to a child who has been in foster care for 15 of the most recent 22 months, unless one of the exceptions listed in § 12-15-317(2), Ala.Code 1975, applies. However, the unilateral filing of the petition to terminate parental rights does not alter any contrary permanency plan calling for family reunification or preservation. DHR would still be under a juvenile-court order to pursue reasonable family-reunification and preservation efforts. However, if, after DHR files a petition to terminate parental rights, a juvenile court changes the permanency plan to adoption by an unidentified resource without expressly providing that DHR continue pursuing other permanency plan options, which apparently occurred in this case, DHR would no longer be required to make reasonable family-reunification efforts.

. Under § 12-15-315(b), a juvenile court can order DHR to pursue family reunification, placement with a relative, and adoption with termination of parental rights simultaneously. In such a case, a judgment authorizing DHR to pursue adoption would not imply an order relieving DHR of the duty to make reasonable efforts to reunite the family.

. The legislature intends that juvenile courts should, in most circumstances, direct their efforts toward family reunification and pursue reasonable efforts toward parental rehabilitation. See § 12 — 15—312(b), Ala.Code 1975. This court has held that those efforts should continue until the juvenile court determines that family reunification cannot be achieved timely or in a manner consistent with the best interests of the child. See M.AJ. v. S.F., 994 So.2d 280 (Ala.Civ.App.2008). Nothing in our opinion should be construed as encouraging juvenile courts to abandon family-reunification efforts prematurely simply because DHR files a petition to terminate parental rights. In this case, the juvenile court changed the permanency plan to adoption, thereby ending family-reunification and preservation efforts, after receiving information that DHR had, the day before, filed petitions to terminate the mother’s parental rights; however, the record shows that the juvenile court acted only after requiring DHR to make reasonable efforts to rehabilitate the mother or to place the children with fit relatives during the previous almost three years.

. In his dissent, Presiding Judge Thompson argues that this court erred in deciding in other appeals that certain "orders relieving DHR from its obligation to make reunification efforts were appealable.” 145 So.3d at 22 (citing D.P., supra; E.E.R. v. Marion Cnty. Dep’t of Human Res., 89 So.3d 792, 793 n. 1 (Ala.Civ.App.2012); L.M. v. Jefferson Cnty. Dep’t of Human Res., 68 So.3d 859 (Ala.Civ. App.2011); and M.H. v. Jefferson Cnty. Dep’t of Human Res., 42 So.3d 1291, 1293 (Ala.Civ. App.2010)). We need not decide whether those cases or L.S. v. Shelby County Department of Human Resources, 28 So.3d 804, 805 (Ala.Civ.App.2009) (concluding that judgment, which determined that a mother was precluded from obtaining custody of her child based on her prior conviction of a sex offense, was final), conflict with Ex parte T.C. or with certain language of the Alabama Juvenile Justice Act, as Presiding Judge Thompson argues, because the judgments at issue in this appeal differ from the judgments involved in those cases. The judgments at issue in this appeal do not merely declare that DHR had no duty to make reasonable efforts to rehabilitate the parent, but go further to determine that no suitable relatives exist to assume custody of the children and that the children should be placed for adoption, thereby deciding all the contested issues between the parties and concluding the dependency proceedings.

. In addressing Presiding Judge Thompson's concerns, we do not intend to hold that the taking of an appeal from a permanency-hearing judgment prevents the institution or continuation of a separate termination-of-parental-rights action. Because that issue is not before us, we express no opinion on that point.

. Nothing in our opinion is intended to imply that a juvenile court must make findings of fact in a judgment following a permanency-plan hearing.

. Rule 1(B), Ala. R. Juv. P., specifically requires the filing of postjudgment motions in juvenile-court cases when such motions are required by the Alabama Rules of Civil Procedure, stating that such postjudgment motions must be filed with 14 days of the entry of the judgment. The supreme court, in New Properties, L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004), construed Rule 52(b), Ala. R. Civ. P., to require that, in cases in which a judge sits without a jury and does not make findings of fact, a litigant asserting the insufficiency of the evidence must file a post-judgment motion raising that issue in order to preserve it for appeal. Thus, it is clear that a parent must file a postjudgment motion challenging the sufficiency of the evidence when a juvenile court enters a judgment without making findings of fact regardless of whether that practice may seem "unwise." 145 So.3d at 27 (Thompson, P.J., dissenting).