STUART, Justice
(dissenting).
The main opinion would reverse the judgment entered by the Court of Civil Appeals affirming the orders entered by *37 the Coffee Juvenile Court following a permanency hearing on the ground that those orders were nonfinal and therefore would not support an appeal. I disagree with the conclusion that the orders appealed from were nonfinal, and I accordingly dissent.
Section 12-15-601, Ala.Code 1975, provides, in relevant part, that “[a] party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court proceeding pursuant to this chapter.” In Ex parte T.C., 96 So.Bd 123, 129 (Ala.2012), we explained that this language does not grant the parties to a juvenile-court proceeding a right to immediately appeal any judgment or order entered in such a proceeding; rather, § 12-15-601 provides a basis for appealing only those judgments or orders entered by a juvenile court that are considered “final.” We have elsewhere explained that a final judgment is one which “ ‘conclusively determines the issues before the court and ascertains and declares the rights of the parties.’ ” Queen v. Belcher, 888 So.2d 472, 475 (Ala.2003) (quoting Palughi v. Dow, 659 So.2d 112,113 (Ala.1995)).
Juvenile-court proceedings, however, are unique and, unlike other civil cases, “may involve multiple ‘final’ appealable orders before the juvenile case is closed.” Ex parte T.C., 96 So.3d at 130. In D.P. v. Limestone County Department of Human Resources, 28 So.3d 759, 762-64 (Ala.Civ.App.2009), the Court of Civil Appeals discussed the unique nature of juvenile-court eases and further described when judgments and orders entered in these proceedings may be appealed:
“Although a juvenile court’s orders in a dependency case are, in one sense, never ‘final’ because the court retains jurisdiction to modify its orders upon a showing of changed circumstances, see C.L. v. D.H., 916 So.2d 622 (Ala.Civ.App.2005); Committee Comments, Rule 4, Ala. R.App. P., this court has always treated formal dependency adjudications as final and appealable judgments despite the fact that they are scheduled for further review by the juvenile court.
[[Image here]]
“In H.H. v. Baldwin County Department of Human Resources, 989 So.2d 1094, 1108 (Ala.Civ.App.2007) (opinion on return to remand) (authored by Moore, J., with two judges concurring in the result), this court explained that a permanency hearing is statutorily mandated as the means by which the juvenile court is to determine the ‘permanent disposition’ of the child. In two other recent cases, Judge Moore issued special writings outlining a shift in procedure with respect to dependeney/ter-mination-of-parental-rights cases that, he perceived, had been accomplished by our legislature’s amendment of the Alabama Juvenile Justice Act of 1990 (‘the former AJJA’), § 12-15-1 et seq., Ala. Code 1975, and the Child Protection Act (‘CPA’), § 26-18-1 et seq., Ala.Code 1975, in order to comply with federal legislation known as the Adoption and Safe Families Act (‘ASFA’), 42 U.S.C. § 671 and § 675; in separate special writings in those cases, Judge Bryan and Judge Thomas agreed with Judge Moore as to this issue. See T. V. v. B.S., 7 So.3d 346 (Ala.Civ.App.2008), and A.D.B.H. v. Houston County Dep’t of Human Res., 1 So.3d 53 (Ala.Civ.App.2008).
“ ‘In a permanency hearing, the juvenile court is to “determine” which of several custodial arrangements — return to the parent, referral for termination of parental rights and adoption, or placement with a relative or other legal custodian — “shall be” the permanency plan. Id. The purpose of re *38 quiring the 12-month permanency hearing is to comply with the policy behind the ASFA to ensure “that children are provided a permanent home as early as possible.” Kurtis A. Kem-per, Annotation, Construction and Application by State Courts of the Federal Adoption and Safe Families Act and Its Implementing State Statutes, 10 A.L.R. 6th 173, 193 (2006).’
“A.D.B.H., 1 So.3d at 69 (Moore, J., concurring in part and concurring in the result) (footnotes omitted).
“The ASFA and the amendments to the former AJJA and the CPA placed new emphasis on the permanency hearing as a ‘vitally important’ step in dependency/termination-of-parental-rights proceedings. See A.D.B.H., 1 So.3d at 68 (Thomas, J., concurring specially). T.V. and AD.B.H. make it clear that issues such as DHR’s plan to reunify a family, the reasonableness of DHR’s efforts to rehabilitate a parent, and the possible placement of a child with a relative are meant to be aired and resolved at a permanency hearing. To the extent that a juvenile court’s permanency order resolves crucial issues, therefore, it is reasonable to expect that a parent has the right to judicial review of the juvenile court’s decision with respect to those issues. See T.V. v. B.S., 7 So.3d at 361 (Moore, J., concurring in the result) (stating that ‘[i]f the mother had had any complaint about the reasonableness of DHR’s efforts to reunite the family, the finding that her efforts to rehabilitate had been unsuccessful, the placement of the child with [a relative] without consideration of other relatives, or the terms of her visitation, the mother’s remedy was to appeal the judgment entered after the permanency hearing’).
“Accordingly, we have treated a juvenile court’s permanency order as final and appealable when it results in depriving a parent of the care, custody, or visitation with his or her child. See R.J.L. v. Lee County Dep’t of Human Res., 976 So.2d 455, 456 (Ala.Civ.App.2007) (appeal of a permanency order transferring ‘physical custody of ... the mother’s two-year-old son[] from the child’s foster parents in Alabama to the mother’s cousins ... in Watertown, New York’), and D.B. v. Madison County Dep’t of Human Res., 937 So.2d 535, 536 (Ala.Civ.App.2006) (appeal of a permanency order awarding legal and physical custody of the child to the maternal aunt).
“In determining whether any juvenile-court order that is subject to revision is appealable, we consider that the focus should be on whether the order addresses crucial issues that, if not objected to by the aggrieved party, are thereafter precluded from appellate review. This court has long considered dependency determinations to be final and appeal-able, but there is nothing magic about dependency determinations as opposed to permanency orders. We hold that it is immaterial, for purposes of finality and appealability, that a juvenile court’s order emanates from the permanency-plan hearing rather than from the periodic review of a dependency determination. If the order addresses crucial issues that could result in depriving a parent of the fundamental right to the care and custody of his or her child, whether immediately or in the future, the order is an appealable order.
“Turning to the permanency order in the present case, we consider that it addresses crucial issues with respect to both parents. The court approved the permanency plan for the mother as ‘reunification with a parent’; thus, the mother had no reason to appeal. However, had the permanency plan been termi *39 nation of parental rights or permanent relative placement, the mother’s remedy would have been ‘to appeal the judgment entered after the permanency hearing.’ T.V. v. B.S., 7 So.3d at 361 (Moore, J., concurring in the result). The permanency order in the present case addressed a crucial issue with respect to the father because it removed his entitlement to rehabilitation or reunification services provided by DHR. We hold that the permanency order was final and ap-pealable with respect to both parties; therefore, there was no need for the juvenile court to certify the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., before we could entertain the father’s appeal.”
(Emphasis added.) Thus, as D.P. explains, a parent may immediately appeal an issue that is resolved in a permanency hearing if the resolution of that issue could result in depriving the parent of his or her fundamental right to care for and have custody of his or her child.
In the instant case, the mother appeals the findings made by the juvenile court in its January 3, 2012, orders entered following the August 4, 2011, permanency hearing (1) that adoption was the most appropriate permanency plan, and (2) that DHR had made reasonable efforts to reunite the mother with the children.[9] The Court of Civil Appeals described the effects of these findings as follows in its opinion affirming the juvenile court’s judgments:
“[W]hen a juvenile court orders that a child be placed for adoption with an unidentified resource, the law requires DHR to file a petition to terminate the parental rights of the parents of the child. See 12-15-315(a)(2), Ala.Code 1975 (stating that DHR ‘shall’ file a petition to terminate parental rights when the permanency plan calls for adoption by an unidentified resource or a foster parent). Thus, unless the juvenile court provides for concurrent permanency planning, see § 12-15-315(b), Ala.Code 1975 (authorizing concurrent permanency planning), which the judgments at issue in this appeal did not do, the approval of a permanency plan of adoption, without any express direction for DHR to continue to make reasonable family-reunification efforts, necessarily implies that the juvenile court has turned its focus away from family reunification and toward the severance of the parent-child relationship. Accordingly, the judgments at issue in this case relieved DHR of continuing to make reasonable efforts to rehabilitate the mother or to reunite her with the children.
“The judgments also relieved DHR of continuing to make efforts to locate relatives ‘qualified to receive and care for the childfren].’ § 12-15-314(a)(3)c., Ala. Code 1975. When a permanency plan establishes a goal of relative placement, the juvenile court and DHR have a duty to make reasonable efforts to accomplish that goal. See § 12 — 15—312(b), Ala.Code 1975.' In this case, DHR presented evidence indicating that, after nearly three years of intensive investigation, it could not locate a willing relative fit to care for the children. After receiving that evidence, the juvenile court changed the previous permanency plan from placement with a relative to adoption. That determination implies that the juvenile court found that none of the relatives proffered by the mother would be suit *40 able custodians for the children or that it would otherwise be in the best interests of the children to be adopted by an unidentified resource rather than to be placed in a relative’s custody. As such, the juvenile court, in effect, directed DHR to cease its efforts to locate a qualified relative to receive the children and to redirect its efforts toward adoption with a termination of the mother’s parental rights.”
F.V.O. v. Coffee Cnty. Dep’t of Human Res., 145 So.3d 11, 17 (Ala.Civ.App.2012) (footnotes omitted). Thus, the import of the juvenile court’s judgments is that DHR may cease its efforts both to rehabilitate the mother and to locate a qualified relative to take custody of the children. These are crucial issues, and the juvenile court’s resolution of these issues could result in depriving the mother of her fundamental right to care for and have custody of her children. Accordingly, the mother should be entitled to seek immediate appellate review of the juvenile court’s judgments.
I am not persuaded by the suggestion in the main opinion that the mother may subsequently relitigate these issues in a termination-of-parental-rights proceeding or in an appeal from a later judgment entered following such a proceeding. As explained by the Court of Civil Appeals, the relevant statutes indicate that parent-rehabilitation and relative-identifieation- and-placement issues are meant to be resolved in the context of permanency hearings, and it is logical and consistent with those same statutes that appellate review of those issues takes place following the permanency order making those determinations, not following an entirely separate termination-of-parental-rights action:
“Section 12-15-319[, Ala.Code 1975,] requires a juvenile court, when deciding whether grounds for termination [of parental rights] exist, to consider whether DHR’s reasonable parental-rehabilitation efforts have failed. However, nothing in § 12-15-819 requires the juvenile court to relitigate the issue of the reasonableness of DHR’s efforts during the adjudicatory phase of a termination-of-parental-rights proceeding. By that point, in an ordinary case like this case, the legislature intended that any questions regarding the reasonableness or success of DHR’s rehabilitation efforts would have long ago been decided in a permanency hearing. D.P., supra. Although a juvenile court must consider the failure of reasonable family-reunification efforts, it should do so only by taking judicial notice of its prior judgment. See generally Ex parte State Dep’t of Human Res., 890 So.2d 114 (Ala.2004) (authorizing juvenile court to take judicial notice of its own records but not of court reports containing inadmissible hearsay evidence). Otherwise, allowing a parent to raise the issue at such a late stage would not only be duplicative and a waste of judicial resources but could cause an unwarranted delay in the final determination of the termination-of-parental-rights petition. See T.V. v. B.S., 7 So.3d 346, 361 (Ala. Civ.App.2008) (Moore, J., concurring in the result).
“In Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990), the supreme court held that, under former § 26-18-7, Ala.Code 1975, the predecessor statute to § 12-15-319, a juvenile court could not terminate a parent’s parental rights without exhausting viable alternatives. After Beasley was decided, our legislature amended the former Alabama Juvenile Justice Act, former 12-15-1 et seq., Ala. Code 1975, to comply with the federal Adoption and Safe Families Act, 42 U.S.C. § 671 and § 675, by, among other things, mandating that juvenile courts *41 decide the merits of relative placement at permanency hearings. See A.D.B.H. [v. Houston Cnty. Dep’t of Human Res.], 1 So.3d [53,] 69 [ (Ala.Civ.App. 2008) ] (Moore, J., concurring in part and concurring in the result). Those legislative changes did not abrogate the need for juvenile courts to exhaust viable alternatives, which is mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, see Roe v. Conn, 417 F.Supp. 769, 779-80 (M.D.Ala.1976), but established a new judicial procedure for implementing that standard, at least for children in foster-care placement. Instead of awaiting the adjudicatory hearing to determine whether placement with a relative could be accomplished as a viable alternative to termination of parental rights, the legislature decided that the issue would be decided in a separate permanency hearing to take place before the termination-of-parental-rights adjudicatory hearing. See § 12-15-315. Thus, contrary to Presiding Judge Thompson’s dissent, 145 So.3d at 20, it would not be ‘premature’ to consider any issue regarding relative placement on an appeal from a permanency judgment; it would, in fact, be too late to consider those issues on an appeal from a judgment terminating a parent’s parental rights.
“In D.P., this court held that a dependency order should be considered final and appealable if it decides crucial issues regarding the fundamental rights of parents that would otherwise evade appellate review. 28 So.3d at 764. The judgments in this case decide issues that adversely affect the fundamental rights of the mother. Unless we allow this appeal, the mother generally will be precluded from raising those same issues in any subsequent appeal. Hence, the holding in D.P. only reinforces our conclusion that the judgments at issue are final and appealable. We note Presiding Judge Thompson’s concern that allowing appeals from permanency-hearing judgments may slow down the progress toward termination of parental rights in some cases. 145 So.3d at 23. However, we cannot overlook the stated legislative intent that certain issues be adjudicated in permanency hearings or ignore that parents have a statutory right to raise those issues on appeal from the judgment in which they were decided, see § 12-15-601, and not from a later judgment in a totally separate action.”
F.V.O., 145 So.3d at 20 (emphasis added). I believe the orders entered by the juvenile court following the August 4, 2011, permanency hearing were final and that the mother accordingly had a right to appeal those orders pursuant to § 12-15-601. I therefore respectfully dissent.
BOLIN and SHAW, JJ., concur.

. In orders entered following previous permanency hearings, the juvenile court had held that DHR should continue to make reasonable efforts to reunite the children with the mother and that the most appropriate permanency plan for the children was placement with a relative.